IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| CRYSTAL LYNN MCCOY, ET AL. | § | |
| Vs. | § | CIVIL ACTION NO. 2:04-CV-223 |
| EAST TEXAS MEDICAL CENTER REGIONAL HEALTHCARE SYSTEM, ET AL. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.   Introduction.**

Plaintiffs Crystal Lynn McCoy ("McCoy") and Cora Fay Edison ("Edison") filed a class action complaint against East Texas Medical Center Regional Healthcare System, East Texas Medical Center–Jacksonville, and East Texas Medical Center (together "ETMC"). The Plaintiffs seek to certify a class consisting of all uninsured patients of ETMC who were charged an amount for medical care in excess of the amount charged to ETMC's Medicaid patients and/or were pursued for such debt through collection efforts and lawsuits. The Plaintiffs' Complaint alleges the following claims against the ETMC entities:  (1) a third-party beneficiary claim for breach of contract between ETMC and the federal government under 26 U.S.C. § 501(c)(3); (2) breach of the duty of good faith and fair dealing; (3) violation of the Texas Deceptive Trade Practices Act ("TDTPA"), Tex. Bus. & Com. Code § 17.41 *et seq.*; (4) unjust enrichment/constructive trust; (5) civil conspiracy/concert of action; (6) and injunctive/declaratory relief.  ETMC has moved to dismiss the Plaintiffs' class action complaint under F. Rule Civ. P. 12(b)(1) and 12(b)(6).  The Court grants ETMC's motion and dismisses with prejudice the Plaintiffs' causes of action based upon Federal law.  The Court dismisses without prejudice Plaintiffs' supplemental claims based upon Texas law.

## II. Factual Background.

According to McCoy's complaint, she went to ETMC–Jacksonville on December 30, 2002, complaining of abdominal pain. She received treatment in ETMC–Jacksonville's emergency room and was released after three hours at the hospital. ETMC–Jacksonville charged McCoy $4,135.20 for services rendered. McCoy, however, was an uninsured student who had no money to pay for the hospital visit. As a result, McCoy claims that she has been receiving bills and demands for payment from bill collectors representing the hospital.

According to Edison's complaint, she was involved in a car wreck on January 9, 2002, in Tyler, Texas. Edison was transported to ETMC in Tyler, where she received treatment. Edison claims to have been uninsured at the time of treatment and indigent. According to Edison, she had received treatment several times before the car wreck from ETMC and did not have sufficient funds to pay for the previous treatments as well. Edison claims that ETMC has repeatedly tried to collect overdue bills for the various treatments through mailings and phone calls from the hospital, as well as a collection agency.

ETMC Regional Healthcare System is a not-for-profit Texas corporation that operates ETMC–Jacksonville and East Texas Medical Center. Both ETMC–Jacksonville and ETMC are also not-for-profit Texas corporations. The Plaintiffs state the following allegations against ETMC defendants:

> ETMC has engaged in the pattern and practice of charging inordinate and inflated rates for medical care to the Plaintiff and the Class . . . . Defendants [sic] ETMC charges the Plaintiff and the Class more than they charge most insured patients and patients on Medicare or Medicaid for the same medical services. It also utilizes aggressive and humiliating collection practices to recover this inflated medical debt from the Plaintiff and the Class.

(Class Action Complaint 3). The Plaintiffs further state:

> Such charging and collection practices violate ETMC's agreement with the United States government and any other taxing entity such as the State of Texas or the various counties or cities involved to provide mutually affordable medical care to the Plaintiffs and the Class in return for a substantial federal, state[,] and local tax exemption.

(*Id.*). The Plaintiffs contend they and others similarly situated are third-party beneficiaries of these agreements with the United States government and other taxing entities.

The Court notes that this lawsuit is one of dozens of similar lawsuits filed in federal district courts across the country on behalf of putative classes of uninsured and indigent patients based upon legal theories identical to those advanced by the Plaintiffs.[1] In October, 2004, the Judicial Panel on

---

[1] *See, e.g.*, *Kabeller v. Orlando Reg'l Healthcare Sys., Inc.*, Case No. 6:04-CV-1106ORL19DAB, 2005 WL 1925717 (M.D. Fla. Aug. 11, 2005); *Cygan v. Resurrection Med. Ctr.*, Case No. 04 C 4168 (N.D. Ill. July 27, 2005); *Bobo v. Christus Health*, 227 F.R.D. 479 (E.D. Tex. Apr.26, 2005); *Amato v. UPMC*, 371 F. Supp. 2d 752 (W.D. Pa. Apr.21, 2005); *Ellis v. Phoebe Putney Health Sys., Inc.*, Case No. 1:04-cv-80 (M.D. Ga. Apr. 8, 2005); *Corely v. John D. Archibald Mem. Hosp., Inc.*, Case No. 1:04-cv-110 (M.D. Ga. Mar. 31, 2005); *Watts v. Advocate Health Care Network*, Case No. 04 C 4062 (E.D. Ill. Mar. 30, 2005); *Kolari v. New York-Presbyterian Hosp.*, 2005 WL 710452 (S.D.N.Y. Mar.29, 2005); *Valencia v. Miss. Baptist Med. Ctr., Inc.*, 363 F. Supp. 2d 867 (S.D. Miss. Mar.29, 2005); *Fields v. Banner Health*, Case No. CIV-04-1297 (D. Ariz. Mar. 23, 2005); *Jellison v. Fla. Hosp. Healthcare Sys., Inc.*, Case No. 6:04-cv-1021 (M.D. Fla. Mar. 14, 2005); *Wright v. St. Dominic Health Servs., Inc.*, Case No. Civ.A.3:03CV521LN, 2005 WL 743339 (S.D. Miss. Mar.1, 2005); *Quinn v. BJC Health Sys.*, 364 F. Supp. 2d 1046 (E.D. Mo. Mar.1, 2005); *Sabeta v. Baptist Hosp. of Miami, Inc.*, Case No. 04-21437-CIV (S.D. Fla. Feb. 23, 2005); *Schmitt v. Protestant Mem'l Med. Ctr., Inc.*, Case No. 04-cv-00577 (S.D. Ill. Feb. 23, 2005); *Hagedorn v. St. Thomas Hosp., Inc.*, Case No. 3:04-0526 (M.D. Tenn. Feb. 7, 2005); *Peterson v. Fairview Health Serv.*, Case No. Civ.A04-2973 ADM/AJB, 2005 WL 226168 (D. Minn. Feb.1, 2005); *Daly v. Baptist Health,* Case No. 4:04-cv-789 (W.D. Ark. Jan. 31, 2005); *Washington v. Med. Ctr. of Cent. Ga., Inc.*, Case No. 5:04-cv-185 (M.D. Ga. Jan. 21, 2005); *Hogland v. Athens Reg'l Health Serv., Inc.*, Case No. 3:04-cv-50 (M.D. Ga. Jan. 21, 2005); *Shriner v. ProMedica Health Sys., Inc.*, Case No. 3:04 CV 7435, 2005 WL 139128 (N.D. Ohio Jan.21, 2005); *Hudson v. Cent. Ga. Health Serv.*, Case No. 5:04-cv-301 (M.D. Ga. Jan. 13, 2005); *Lorens v. Catholic Health Care Partners*, 356 F. Supp. 2d 827 (N.D. Ohio Jan.13, 2005); *Ferguson v. Centura Health Corp.*, 358 F. Supp. 2d 1014 (D. Colo. Dec.29, 2004); *Burton v. William Beaumont Hosp.*, 347 F. Supp. 2d 486 (E.D. Mich. Dec.3, 2004); *Darr v. Sutter Health*, Case No. C 04-02624 (N.D. Cal. Nov. 30, 2004); *Kizzire v. Baptist Health Sys., Inc.*, 343 F. Supp. 2d 1074 (N.D. Ala. Oct. 21, 2004).

Multidistrict Litigation rejected a motion to transfer and consolidate the pending actions into one combined action.[2] *In re Not-For-Profit Hospitals/Uninsured Patients Litigation*, 341 F. Supp. 2d 1354 (J.P.M.L. Oct. 19, 2004).  The plaintiffs in these similar cases have not fared well.  No court has found for the plaintiffs on any substantive legal issue.  *See supra* note 1.

**III.    Legal Analysis.**

In considering a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), courts have found dismissal pursuant to this provision "is viewed with disfavor and is rarely granted." *Lowery v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).  "The complaint must be liberally construed in favor of the plaintiff and all facts pleaded in the original complaint must be taken as true." *Id.*  A district court may not dismiss a complaint under Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would enable him to relief." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957*)*), *cert denied*, 536 U.S. 960 (2002).  In discussing this standard for dismissal, the Fifth Circuit has stated:  "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Id.* (quoting 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1357, at 601 (1969)).  "In other words, a motion to dismiss an action

---

[2]The Panel held "Section 1407 centralization would neither serve the convenience of the parties and witnesses nor further the just and efficient conduct of this litigation. Notwithstanding the numerosity of actions, movants have failed to persuade us that these actions share sufficient common questions of fact to warrant Section 1407 transfer." *In re Not-For-Profit Hospitals/Uninsured Patients Litigation*, 341 F. Supp. 2d 1354, 1356 (J.P.M.L. Oct. 19, 2004).

for failure to state a claim 'admits the facts alleged in the complaint, but challenges the plaintiff's rights to relief based upon those facts.'" *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir.1992)). Furthermore, "when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory." *Id.* at 161-62.

**A.   Breach of Contract Under I.R.C. § 501(c)(3).**

In Count One, the Plaintiffs claim that they are third-party beneficiaries of ETMC's agreement with the United States government under 26 U.S.C. § 501(c)(3)[3] in which the United States government gave ETMC federal income tax exemption in exchange for ETMC:

> operat[ing] exclusively for charitable purposes; provid[ing] emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such

---

[3]The relevant sections of 26 U.S.C. § 501 state:

(a) Exemption from taxation.--An organization described in subsection (c) . . . shall be exempt from taxation under this subtitle . . . .

(c) List of exempt organizations.–The following organizations are referred to in subsection (a):

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

>     medical care; provid[ing] mutually affordable medical care to the Plaintiffs and the
>     Class; and not . . . pursu[ing] outstanding medical debt from the Plaintiffs and the
>     Class by engaging in aggressive, abusive, and humiliating collection practices.

(Class Action Complaint 12-13).[4]

The Plaintiffs claim that ETMC breached the alleged agreement with the United States government through the following actions:

>     charging the Plaintiffs and the Class the highest and full undiscounted cost of
>     medical care; charging the Plaintiffs and the Class more than its insured patients for
>     the same medical services; failing to use its assets and revenues in the billions of
>     dollars to provide mutually affordable medical care the Plaintiff and the Class; and
>     utilizing aggressive, abusive[,] and humiliating collection practices such as lawsuits,
>     liens, and garnishments to collect such inflated and unreasonable medical debt from
>     the Plaintiffs and the Class.

(*Id.* 13).

The Plaintiffs do not cite any case or statutory authority for their assertion that a not-for-profit organization enters into a contract with the United States government when it qualifies for tax-exempt status under § 501(c)(3). "The notion that the federal income tax is contractual or otherwise consensual in nature . . . has been repeatedly rejected by the courts." *McLaughlin v. Comm'r*, 832 F.2d 986, 987 (7th Cir. 1987); *see Newman v. Schiff*, 778 F.2d 460, 467 (8th Cir. 1985); *United States v. Drefke*, 707 F.2d 978, 981 (8th Cir.), *cert. denied*, 464 U.S. 942, 104 S. Ct. 359, 78 L. Ed. 2d 321 (1983). Furthermore, in *Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry., Co.*, the Supreme Court stated:

>     [A]bsent some clear indication that the legislature intends to bind itself contractually,
>     the presumption is that "a law is not intended to create private contractual or vested
>     rights but merely declares a policy to be pursued until the legislature shall ordain
>     otherwise." This well-established presumption is grounded in the elementary
>     proposition that the principal function of a legislature is not to make contracts, but

---

[4] The Plaintiffs also complain that they are third-party beneficiaries of ETMC's agreements with the State of Texas, Smith County, Cherokee County, the City of Tyler, and the City of Jacksonville.

6

> to make laws that establish the policy of the state. Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocaly expressed would be to limit drastically the essential powers of a legislative body. Indeed, '[t]he continued existence of a government would be of no great value, if by implications and presumptions, it was disarmed of the powers necessary to accomplish the ends of its creation.' Thus, the party asserting the creation of a contract must overcome this well-founded presumption, and we proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation.

470 U.S. 451, 465-66, 105 S. Ct. 1441, 1451-52, 84 L. Ed. 2d 432 (1985) (citations omitted).

Although § 501(c)(3) contains a list of the types of organizations that may qualify for tax-exempt status, there is no language that demonstrates a clear indication by Congress to create contractual rights.[5] Instead, § 501(c)(3) only establishes a legislative policy of not taxing the income of certain qualifying entities.

The plaintiffs also claim that the regulations promulgated under 26 U.S.C. § 501(c)(3), specifically 26 C.F.R. §§ 1.501(c)(3)-1(a),[6] 1.501(c)(3)-1(c)(1),[7] 1.501(c)(3)-1(d)(1)(i)(b),[8] and

---

[5] The Plaintiffs also cite to the legislative history of 26 U.S.C. § 501(c)(3) in support of their assertion that a not-for-profit organization enters into a contract with the United States government when it qualifies for tax-exempt status under § 501(c)(3). The Plaintiffs cite from a section of the legislative history that states:

> The exemption from taxation of money or property devoted to charitable and other purposes is based upon the theory that the government is compensated for the loss of revenue by its relief form financial burdens which would otherwise have to be met by appropriations form public funds, and by the benefits resulting from the promotion of the general welfare.

H.R. REP. NO. 75-1860, at 19 (1938).

The legislative history cited by the plaintiffs, however, is only a statement of the public policy behind § 501(c)(3).

[6] 26 C.F.R § 1.501(c)(3)-1(a) states:

(a) Organizational and operational tests. (1) In order to be exempt as an organization described in section 501(c)(3), an organization must be both

7

1.501(c)(3)-1(d)(2)[9] set out the terms of the contract between the federal government and any charitable organization accepting a tax exemption under § 501(c)(3). The Plaintiffs citation to regulatory language is unconvincing. The Supreme Court has stated "language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291, 121 S. Ct. 1511, 1522, 149 L. Ed. 2d 517 (2001). Furthermore, "it is most certainly incorrect to say that language in a regulation

---

   organized and operated exclusively for one or more of the purposes specified in
   such section. If an organization fails to meet either the organizational test or the
   operational test, it is not exempt.

[7]26 C.F.R. § 1.501(c)(3)-1(c)(1) states:

Operational test–(1) Primary activities. An organization will be regarded as
operated exclusively for one or more exempt purposes only if it engages primarily
in activities which accomplish one or more of such exempt purposes specified in
section 501(c)(3). An organization will not be so regarded if more than an
insubstantial part of its activities is not in furtherance of an exempt purpose.

[8]26 C.F.R. § 1.501(c)(3)-1(d)(1)(i)(b) states:

(d) Exempt purposes–(1) In general. (i) An organization may be exempt as an organization
described in section 501(c)(3) if it is organized and operated exclusively for one or more of the
following purposes:

(b) Charitable[.]

[9]26 C.F.R. § 1.501(c)(3)-1(d)(2) states:

Charitable defined. The term charitable is used in section 501(c)(3) in its
generally accepted legal sense and is, therefore, not to be construed as limited by
the separate enumeration in section 501(c)(3) of other tax-exempt purposes which
may fall within the broad outlines of charity as developed by judicial decisions.
Such term includes: Relief of the poor and distressed or of the
underprivileged . . . .

can conjure up a private cause of action that has not been authorized by Congress." *Id.* As there is no indication from the text of 26 U.S.C. § 501(c)(3) that Congress through the statute created contractual rights, the cited regulations do not support the Plaintiffs' claims that the regulations are evidence of a contract.[10]

The Plaintiffs further argue that this Court should interpret 26 U.S.C. § 501(c)(3) in the same way that other courts have interpreted the Hill-Burton Act,[11] 42 U.S.C. § 291, *et seq.* Under the provisions of the Hill-Burton Act, Congress allotted federal funds to the states in order to assist them in carrying out their programs for the construction and modernization of hospitals and other medical facilities. Any state wishing to participate in the Hill-Burton program had to submit a state plan meeting the requirements set forth in the Act, which included assurances that the state would provide "a reasonable volume of services to persons unable to pay therefor." 42 U.S.C. § 291c(e)(2). Several courts, including the Fifth Circuit, have allowed indigent persons to sue a hospital facility in order to enforce the facility obligation under the Act to provide services to the indigent. *See Flagstaff Med. Ctr. v. Sullivan*, 962 F.2d 879, 891-92 (9th Cir. 1992); *Saine v. Hosp. of Hall County*, 502 F.2d 1033, 1034-35 (5th Cir. 1974); *Euresti v. Stenner*, 458 F.2d 1115, 1118-19 (10th Cir.

---

[10]Regardless of whether Congress created a private cause of action in the text of 26 U.S.C. § 501(c)(3), the regulations cited by the plaintiffs do not support their assertion that the granting of a § 501(c)(3) exemption creates a contract between the Federal government and the exempted entity which can be enforced by those who are intended beneficiaries. The regulations deal with how to qualify as an exempt organization under § 501(c)(3).

[11]Also known at Title VI of the Public Health Service Act that was passed in 1946. For a discussion of the Hill-Burton Act, *see Am. Hosp. Ass'n v. Schweiker*, 721 F.2d 170, 172-175 (7th Cir. 1983), *cert. denied*, 466 U.S. 958, 104 S. Ct. 2169, 80 L. Ed. 2d 553 (1984).

1972).[12] These courts concluded that Congress created an implied cause of action under contract law for persons intended to be benefitted by the provisions of the Hill-Burton Act. *Id.*

The plaintiffs' argument that Congress in 26 U.S.C. § 501(c)(3) created an implied cause of action under contract law similar to the one in the Hill-Burton Act is not persuasive. The Hill-Burton Act is dissimilar from 26 U.S.C. § 501(c)(3) in many respects. First, the benefits conferred by the statutes are different. The Hill-Burton Act provided direct funds for the specific, pre-negotiated purpose of constructing hospitals, while § 501(c)(3) grants tax exemptions to qualified entities for multiple purposes. 42 U.S.C. §§ 291, 291d. Second, the Hill-Burton Act required states to offer assurances before the disbursement of federal funds that the proposed facilities would be used in part to serve indigent patients. 42 U.S.C. § 291b. An entity under § 501(c)(3) is not required to offer such assurances to qualify for tax-exempt status. Finally, the successor to the Hill-Burton Act, Title XVI of the Public Health Service Act, 42 U.S.C. § 300q *et seq.*, provides a private cause of action to enforce the Act. 42 U.S.C. § 300s-6. The Internal Revenue Code does not provide a private cause of action regarding § 501(c)(3) eligibility. Instead, the Internal Revenue Code states: "Except as otherwise expressly provided by law, the administration and enforcement of the [tax code] shall be performed by or under the supervision of the Secretary of the Treasury." 42 U.S.C. § 7801(a). Furthermore, if an organization previously determined by the IRS to be qualified for a § 501(c)(3) exemption no longer meets the qualifications, then the IRS can revoke the exemption. *See, e.g., Bob Jones Univ. v. Simon*, 416 U.S. 725, 94 S. Ct. 2038, 40 L. Ed. 2d 496 (1974). The above differences demonstrate § 501(c)(3) is not analogous to the Hill-Burton Act. Therefore, the

---

[12]Some courts, however, have concluded that the Hill-Burton Act did not create a private cause of action. *See, e.g., White v. Moses Taylor Hosp.*, 763 F. Supp. 776, 783-84 (M.D. Pa. 1991).

Plaintiffs' argument to interpret § 501(c)(3) as creating contractual rights similar to those found under the Hill-Burton Act is rejected.

Even assuming § 501(c)(3) created a contract between the federal government and the qualifying entity, the Plaintiffs' pleadings would still fail to state a claim upon which relief could be granted because Congress did not create a private cause of action under § 501(c)(3) and the Plaintiffs are only incidental beneficiaries of the statute. Without a private cause of action and direct beneficiary status, the Plaintiffs lack standing to sue.[13] The Plaintiffs argue that § 501(c)(3) implies a private cause of action as found under the Hill-Burton Act. To determine whether an implied private right of action exists under a statute, the central inquiry is "whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S. Ct. 2479, 2489, 62 L. Ed. 2d 82 (1979). "Statutory intent . . . is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander*, 532 U.S. at 286-87, 121 S. Ct. at 1519-20 (citations omitted).

Section 501(c)(3) does not explicitly grant the general public a private cause of action, nor does it contain any language which implies a private cause of action. As previously discussed, the administration and enforcement of the Internal Revenue Code is to be performed or supervised by the Secretary of the Treasury. 42 U.S.C. § 7801. Furthermore, other courts across the nation have found no evidence of congressional intent to create a private right of action under § 501(c)(3).[14] In

---

[13]Standing is a "core component" and a "essential and unchanging part of the case-or-controversy requirement of Article III [of the United States Constitution]." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).

[14]*See supra* note 1.

11

addition, other sections of the Internal Revenue Code specifically authorize actions by third-parties in several situations. *See*, *e.g.*, 26 U.S.C. § 7426 (civil actions by persons other than taxpayers); *see generally* Title 26, chapter 76, subchapter B (proceedings by taxpayers and third parties). As demonstrated by the referenced sections of the Internal Revenue Code and the private cause of action found in 42 U.S.C. § 300q of Title XVI of the Public Health Service Act, Congress knows how to specifically create private causes of action in comprehensive legislative schemes. "[W]here Congress has otherwise enacted 'a comprehensive legislative scheme[,] including an integrated system of procedures for enforcement,' there is a strong presumption that Congress deliberately did not create a private cause of action." *Tax Analysts v. Internal Revenue Serv.*, 214 F.3d 179, 186 (D.C. Cir. 2000) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 105 S. Ct. 3085, 3093, 87 L. Ed. 2d 96 (1985)). This Court does not find the Plaintiffs' arguments persuasive enough to overcome this presumption.

The Plaintiffs also lack standing to sue because they are only incidental beneficiaries of the tax exempt status conferred by § 501(c)(3). Even if this Court agreed with the Plaintiffs' contention that § 501(c)(3) creates a contract between the federal government and qualifying entities, the Plaintiffs could only be considered incidental beneficiaries unless they demonstrated a direct right to compensation. *State of Mont. v. United States*, 124 F.3d 1269, 1273 n.6 (Fed. Cir. 1997). Clearly, § 501(c)(3) does not create a direct right of compensation for indigent or uninsured hospital patients. Instead, § 501(c)(3) only creates a tax exemption for qualifying entities. Because the Plaintiffs cannot demonstrate a direct right to compensation under § 501(c)(3), they are only incidental beneficiaries and thus do not have standing.

In conclusion, § 501(c)(3) does not establish a contract between the federal government and

qualifying entities.  Therefore, the Plaintiffs cannot be third-party beneficiaries of such a contract. In addition, § 501(c)(3) does not provide the Plaintiffs with an implied cause of action or the right to sue as third-party beneficiaries.  Therefore, Count One, insofar as it is premised on § 501(c)(3), must be dismissed with prejudice for lack of standing and failure to state a claim upon which relief can be granted.

**B.      Breach of the Duty of Good Faith and Fair Dealing.**

In Count Two, the Plaintiffs complain that ETMC breached its duty of good faith and fair dealing resulting from the contract and agreements alleged in Count One by:

> failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such care; charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care; charging the Plaintiffs and the Class a higher amount for medical services than it charged its insured patients for the same services; and utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect such outstanding grossly inflated medical debt from the Plaintiffs and the Class.

(Class Action Complaint 15-16).

Under these allegations, a duty of good faith and fair dealing only exists where the parties are bound by a contractual relationship.  *Okmyansky v. Herbalife Intern. of Am., Inc.*, 415 F.3d 154, 158 n.3 (1st Cir. 2005).  As previously discussed, a contractual relationship between the federal government and a qualified entity is not created by § 501(c)(3).  Therefore, Count Two, insofar as it is premised on § 501(c)(3), must be dismissed with prejudice for lack of standing and failure to state a claim upon which relief can be granted.

**C.     Unjust Enrichment/Constructive Trust.**

The Plaintiffs assert in Count Five[15] that ETMC "has ben unjustly enriched at the Plaintiffs[']

---

[15] The Plaintiffs' Class Action Complaint does not state a "Count Four."  Instead, after the Texas DTPA claim in Count Three, the Complaint alleges the unjust enrichment claim as "Count

and the Class['] expense" by:

> fail[ing] to utilize its substantial net assets and revenue . . . to provide mutually affordable medical care to the Plaintiffs and the Class.  ETMC has also realized profits in the millions of dollars by charging the Plaintiffs and the Class the highest and full undiscounted cost for medical care and by charging the Plaintiffs and the Class a higher amount for medical care that its insured patients.

(Class Action Complaint 17-18).

The Plaintiffs argue that they are entitled to a constructive trust in the amount of: (1) "ETMC's federal, state[,] and local tax exemption savings;" (2) "all profits ETMC wrongfully obtained by charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care;" (3) "the difference between amount ETMC . . . charged the Plaintiffs and the Class and the amount it has charged its insured patients;" and (4) "ETMC['s] net assets and revenues in an amount sufficient to provide to the Plaintiffs and the Class mutually affordable medical care pursuant to its charitable, nonprofit, tax exempt status." (*Id.* 18).

"Claims for unjust enrichment and imposition of a constructive trust are creatures of equity that exist in the absence of a contract." *Peterson v. Fairview Health Servs.*, No. Civ. A04-2973 ADM/AJB, 2005 WL 226168, at *8 (D. Minn. Feb. 1, 2005); *see SMP Sales Mgmt., Inc. v. Fleet Credit Corp.*, 960 F.2d 557, 560 (5th Cir. 1992).  A party may recover under the unjust enrichment theory when one person obtained a benefit from the plaintiff by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 38, 41 (Tex. 1992). A constructive trust can be imposed on the illegally obtained benefit in order for the plaintiff to recover the benefit. *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 409 n.10 (5th Cir. 2004).

The Plaintiffs' claim of unjust enrichment fails as a matter of law.  Hospitals are not required

---

Five."

to provide any specified level of free or below-cost medical care in order to qualify for tax exempt status.[16] Instead, under the "community benefit" standard set forth in Rev. Rul. 69-545, 1969-2 C.B. 117, health-care providers must meet a flexible community benefit test based upon a variety of indicia, one of which may be whether the organization provides free care to indigents.[17]  Section 501(c)(3) imposes no requirement for ETMC to provide mutually affordable medical care to the Plaintiffs and the proposed Class.  Furthermore, even if § 501(c)(3) required qualifying hospitals to provide "mutually affordable medical care," the claim for unjust enrichment is essentially a collateral attack on the IRS's decision to grant ETMC tax exempt status.  As previously discussed, Congress has charged the Secretary of the Treasury with the responsibility to oversee the tax code and only the IRS can challenge a nonprofit organization's tax status.  26 U.S.C. §§ 7801(a), 7428(a).  Thus, the Plaintiffs have no legal authority to challenge the tax exempt status of a qualified § 501(c)(3) entity.  Therefore, Count Five, insofar as it is premised on § 501(c)(3), must be dismissed with prejudice for lack of standing and failure to state a claim upon which relief can be granted.

---

[16]"[T] standard [for federal tax exemption] no longer requires that 'the care of indigent patients be the primary concern of the charitable hospital, as distinguished from the care of paying patients.'" *Redlands Surgical Servs. v. Comm'r*, 113 T.C. 47, 73 (1999) (quoting *Sound Health Ass'n v. Comm'r*, 71 T.C. 158, 177 (1978)).

[17]Under the "community benefit" standard set forth in Rev. Rul. 69-545, 1969-2 C.B. 117:

> [A] non-profit hospital can qualify for a tax exemption if it:  (1) provides an emergency room open to all persons, regardless of their ability to pay; (2) is willing to hire any qualified physician; (3) is run by an independent board of trustees composed of representatives of the community ("community board"); and (4) uses all excess revenues to improve facilities, provide educational services, and/or conduct medical research.

*St. David's Health Care Sys. v. United States*, 349 F.3d 232, 235 (5th Cir. 2003).

**D.     Civil Conspiracy/Concert of Action.**

The Plaintiffs argue in Count Six that the various ETMC entities "have entered into a civil conspiracy which has proximately cause damage to the Plaintiffs to overcharge the uninsured while enjoying tax breaks that have been obtained through misrepresentation and fraud . . . ." (Class Action Complaint 19). This Court has already rejected the Plaintiffs' legal argument that they are third-party beneficiaries of a contract between ETMC and the federal government created by § 501(c)(3) and that ETMC had an obligation to provide specific free or reduced-cost medical care to indigent/uninsured patients. Thus, the various ETMC entities could not have entered into any conspiracy to commit misrepresentation and fraud through their tax status. Therefore, Count Six, insofar as it is premised on § 501(c)(3), must be dismissed with prejudice for lack of standing and failure to state a claim upon which relief can be granted.

**E.     Injunctive Relief/Declaratory Relief.**

The Plaintiffs in Count Eight[18] request:

> a preliminary and/or permanent injunction, in accordance with [Fed. R. Civ. P.] 23(b)(2), ordering ETMC to cease and desist: charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care; charging the Plaintiffs and the Class a higher amount for medical services than its insured patients for the same services; and utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect outstanding grossly inflated medical debt from the Plaintiffs and the Class.

(Class Action Complaint 19-20).

Because the Plaintiffs have not pled a cause of action under which any relief can be granted, the Plaintiffs' request for injunctive/declaratory relief as premised on § 501(c)(3) must be dismissed with

---

[18]The Plaintiffs' Class Action Complaint does not state a "Count Seven." Instead, after the Civil Conspiracy/Concert of Action claim in Count Six, the Complaint argues the Injunctive/Declaratory Relief claim as "Count Eight."

prejudice. *See C.P. Interest, Inc., v. Cal. Pools, Inc.*, 238 F.3d 690, 696 n.2 (5th Cir. 2001); *Earnest v. Lowentritt*, 690 F.2d 1198, 1203 (5th Cir. 1982) (holding declaratory relief statute, 28 U.S.C. § 2201, does not provide an independent cause of action, but rather is only an avenue for relief in a "case of actual controversy within [the court's] jurisdiction." 28 U.S.C. § 2201.).

**IV.     Conclusion.**

Having dismissed the Plaintiffs' federal claims premised on § 501(c)(3) in Counts One, Two, Five, Six, and Eight, this Court declines to exercise supplemental jurisdiction over the Plaintiffs' Texas state law DTPA claim in Count Three and any other claims in the complaint premised on state law. Since there is no diversity of citizenship in the present case, this Court has no original subject matter jurisdiction over any state law claims. *See* 28 U.S.C. § 1332. According to the Fifth Circuit, "[the] general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir.1992). Therefore, this Court dismisses the Plaintiff's remaining state law claims without prejudice.

SIGNED this 31st day of August, 2005.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE